# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES E. THORNTON (Y-19115), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16 C 5952 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| | ) | |
| M. LAKE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles E. Thornton, currently a prisoner at Menard Correctional Center, brings this 42 U.S.C. § 1983 action against defendant Ms. M. Lake, Supervisor of the Law Library Services at the Cook County Department of Corrections. Plaintiff alleges that, while he was an inmate at the Cook County Jail, defendant Lake treated him unfairly with respect to his use/access to the law library. Before the Court is defendant's motion for summary judgment [111]. For the following reasons, the Court denies in part and grants in part defendant's motion.

## BACKGROUND

**I.    Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C).

The party opposing summary judgment also shall submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." *Id.*

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted). In the case of any disagreement, the opposing party must reference "affidavits, parts of the record, and other supporting materials." *Id.* "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted. *See, e.g., Graziano v. Vill. of Oak Park,* 401 F. Supp. 2d 918, 936-37 (N.D. Ill. 2005). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Consistent with the Local Rules, defendant filed a statement of material facts (Dkt. 111-1) along with her motion for summary judgment (Dkt. 111). Also consistent with the Local Rules, defendant filed and served on plaintiff a Local Rule 56.2 Notice (Dkt. 113), which explained in detail the requirements of Local Rule 56.1.

In response, plaintiff filed a one hundred and twenty-one-page document entitled "Response to Defendant Local Rule 56.1(a) Statement of Material Facts and Statement of Additional Facts" (Dkt. 115). This document is comprised of a nineteen-page "Memorandum in Opposition to Defendant's Motion for Summary Judgment" and seventy-five pages of exhibits.

The first fifteen pages of plaintiff's submission correspond to defendant's thirty-two-paragraph Statement of Facts, so the Court construes this portion of plaintiff's submission as a response to defendant's Statement of Facts. *See* Loc. R. 56.1(b)(3). For the most part, plaintiff does not admit or deny defendant's factual statements in his response; instead, he objects to the factual statements on grounds of relevancy.[1] As noted above, although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Wilson v. Kautex, Inc.*, 371 Fed. App'x. 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a *pro se* litigant.") (citation omitted); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). Thus, the Court disregards plaintiff's unresponsive, evasive, or argumentative denials in his response and deems defendant's corresponding (and properly-supported) facts admitted. *See Flores v. Giuliano*, No. 12 C 162, 2014 WL 3360504, at *2 (N.D. Ill. July 9, 2014).

Plaintiff has also submitted additional facts (Dkt. 115 at pgs. 16-26) that include citations to the record and exhibits. Defendant objects to plaintiff's additional statement of facts on the grounds that: (1) it contains numerous arguments which are wholly irrelevant to the claims set out in the Court's initial screening order; (2) several points are based on an affidavit plaintiff

---

[1] Specifically, plaintiff expressly admits defendant's factual statements at ¶¶ 3-5, 7, 21, 23, 25, 26. He purports to deny the factual statement at ¶ 6, and he indicates that the remaining factual statements (¶¶ 1, 2, 8-20, 22, 24, 27-32) are "irrelevant."

3

attached which contains conclusions, his opinion, and speculation; and (3) it contains improper argument. (Dkt. 120 at pgs. 3-4.) The Court has carefully examined each statement for relevancy, evidentiary support, and admissibility, giving deference to plaintiff's version of the facts where they are properly presented and supported by admissible evidence.[2]

With the above factors in mind, the Court turns to the facts of this case.

## II.     Factual Background

From July 2010 until November 2016, plaintiff Charles E. Thornton was housed in the Cook County Department of Corrections ("CCDOC"). (Dkt. 111-1 at ¶ 1.) Defendant M. Lake is and was, at the times relevant to this lawsuit, the supervisor of the law library at CCDOC. (*Id.* at ¶ 2.)

Plaintiff alleges that, between July 15, 2014 and December 20, 2014, he was treated unfairly while attending the law library. (*Id.* at ¶ 3.) Specifically, he alleges that the judge in his criminal case provided an order permitting him to have "access to the law library three times per week for the above-titled case preparation due to the fact that Thornton is proceeding *pro se*." (*Id.* at ¶ 4.) Plaintiff alleges that during this time, he received the wrong case law and that he was not permitted to access the law library three times per week in compliance with the Criminal Court Order. (*Id.* at ¶ 5.) At his deposition, plaintiff testified that during the entirety of the time he had the order, he was able to get one day per week at the law library. (*Id.* at ¶ 6.)

---

[2] As an additional matter, the Court notes that three of the documents plaintiff submitted (separately) in opposition to defendant's summary judgment motion appear to be duplicative of plaintiff's response at docket no. 115 (*See* dkts. 116-118.) To avoid unnecessary confusion, the Court refers/cites to document no. 115 (and the relevant CM/ECF pagination), which includes plaintiff's factual assertions, his memorandum of law, and his attached exhibits.

Plaintiff filed numerous grievances criticizing the unfair treatment he perceived from the law librarians, specifically Hawkins and Warren. (*Id.* at ¶ 7.) At his deposition, plaintiff testified that he did not appeal "each and every one" of the responses to his grievances. (Dkt. 122 at p. 105:23.)[3]

Plaintiff also testified at his deposition that there were times that he was not able to attend the law library twice per week. (111-1 at ¶ 9.) Plaintiff testified that he was not permitted to attend the law library three times per week until he filed "so many grievances . . . eventually [he] started getting in, but that was way down the line though." (*Id.* at ¶ 10.)

At his deposition, plaintiff was presented with the Detainees' Law Library Sign-in Scheduling Log Sheet ("Sign-In Sheet"). (*Id.* at ¶ 11.) Plaintiff testified that his signature on the Sign-In Sheets from July 15, 2014 to October 9, 2015 was true and accurate. (*Id.* at ¶ 12.) The Sign-In Sheets show that between July 14, 2014 and October 9, 2015, plaintiff visited the law library one hundred and fifty-two times. (*Id.* at ¶ 14.) The Sign-In Sheets also show that on sixteen different dates in 2014-2015, plaintiff was on the schedule at the law library, but did not sign in. (*Id.* at ¶ 15.) Plaintiff testified that he had been shipped out to Moultrie County for two to three weeks in 2014. (*Id.* at ¶ 16.) Plaintiff testified that he was able to go to the law library when he was in Moultrie County, although "it was nothing up to par[.]" (Dkt. 122 at p. 75:18-21.) Thus, between July 14, 2014 and October 9, 2015, plaintiff was housed at Cook County Jail for no more than sixty-two weeks. (Dkt. 111-1 at ¶ 17.) During these sixty-two weeks, plaintiff visited the law library on one hundred and fifty-two occasions and was scheduled to visit the law

---

[3] On April 30, 2018, the Court instructed defendant to submit to the Court the full (complete) transcript of plaintiff's deposition for its use in ruling on the pending motion for summary judgment. (Dkt. 121.) Defendant complied with that instruction and submitted the complete transcript on May 7, 2018. (Dkt. 122.)

5

library on sixteen more occasions. (*Id.* at ¶ 18.) Thus, plaintiff was scheduled to visit the law library one hundred and sixty-eight times over a period of sixty-two weeks. (*Id.* at ¶ 19.)

Plaintiff alleges that in July of 2015, Law Librarian Hawkins threatened his court order by saying, "I wouldn't be surprised if your court order disappear[s]." (*Id.* at ¶ 21.) Plaintiff testified that defendant Lake was not present when he visited the law library. (*Id.* at ¶ 22.) Plaintiff alleges that his criminal court order was revoked between September 30, 2015 and November 31, 2015. (*Id.* at ¶ 23.)

At his deposition, plaintiff acknowledged that defendant Lake executed a disciplinary report on September 12, 2014 against Hawkins stating that, "Thelma Hawkins was informed, that Inmate Charles Thornton . . . had a Court Order for law library services three times per week. Ms. Hawkins failed to request to see him three times the weeks of August 15, 2014 and September 5, 2014. If improvements are not made in this regard, termination may result." (*Id.* at ¶ 24.)

Plaintiff testified that he filed numerous grievances while at Cook County Jail. (*Id.* at ¶ 27.) Specifically, plaintiff filed a grievance on September 18, 2015 wherein he stated that "Ms. Warren withheld [his] third case law." (*Id.* at ¶ 28.) On page two of this grievance, defendant Lake responded, thanking him for his opinion. (*Id.* at ¶ 29.) Plaintiff signed under defendant's Response, and did not request an appeal. (*Id.* at ¶ 30.) Plaintiff also filed a grievance on December 22, 2015 wherein he stated that defendant Lake was "showing discriminatory practice against [him] as a pretrial detainee through her staff of Div. 9 and Div. 1 Library Services as well." (*Id.* at ¶ 31.) On page two of his grievance, plaintiff signed under defendant's response and did not request an appeal. (*Id.* at ¶ 32.)

6

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. To do so, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Hemsworth*, 476 F.3d at 490. Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits, also will be considered. *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003). The Court's job as to "a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contest, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Although a Court considers facts and reasonable inferences in the light most favorable to the non-moving party, *Zuppardi v. Wal-Mart Stores, Inc*., 770 F.3d 644, 649 (7th Cir. 2014), the non-movant must show more than disputed facts to defeat summary judgment—disputed facts must be both genuine and material. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict

in favor of the non-movant. *Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

## ANALYSIS

As required under 28 U.S.C. § 1915A, the Court previously screened plaintiff's complaint and based on the allegations therein, permitted plaintiff to proceed against M. Lake with a "class of one" equal protection claim and a retaliation claim. (Dkt. 5 at pgs. 3-4.) Defendant now moves for summary judgment on the basis that: (1) plaintiff failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act ("PLRA"); (2) plaintiff cannot show that defendant Lake intentionally treated him differently than any other inmate (with respect to his "class of one" equal protection claim); (3) plaintiff cannot show a causal link between his grievances and the revocation of his court order (with respect to his retaliation claim); and (4) defendant is entitled to qualified immunity. (Dkt. 111-5 at pgs. 1-2.)

### I. Exhaustion

Defendant first argues that plaintiff failed to exhaust his administrative remedies, as required by the PLRA. Specifically, defendant argues that although plaintiff filed "several grievances and requests during his time as a pretrial detainee[,]" he failed to file "at least two appeals to the responses to his grievances[.]" (Dkt. 111-5 at p. 7.) Defendant argues that plaintiff therefore failed to exhaust his administrative remedies with respect to the claims at issue in this lawsuit. (*Id.*)

The PLRA provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a). The Seventh Circuit requires district courts to interpret the exhaustion requirement "strictly" so inmates "must comply with the specific procedures and deadlines established by the [correctional facility's] policy.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). "Unexhausted claims are procedurally barred from consideration." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). In other words, before an inmate may proceed with a lawsuit in federal court, he must follow all of the grievance procedures in place at his place of confinement. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). If he skips a step, he is deemed to have failed to exhaust. *Id*. Under § 1997e(a), failure to exhaust precludes any federal civil rights action. *Id*.

Here, defendant Lake asserts that "Plaintiff submitted several grievances and requests during his time as a pretrial detainee[,]" (Dkt. 111-5 at p. 7), but that he failed to file "at least two appeals to the responses to his grievances." (*Id.*) To support this contention, defendant points to two grievances in the record: a September 18, 2015 grievance (in which plaintiff primarily complained that "Ms. Warren withheld [his] third case law"), and a December 22, 2015 grievance (in which plaintiff indicated that "Lake was showing discriminatory practice against [him] as a pretrial detainee through her staff of Div. 9 and Div. 1 Library Services as well"). (*Id.*) Defendant points out that with respect to both of these grievances, plaintiff signed under defendant's response and did not complete the appeal portion of the form. (*Id.*) Defendant contends that plaintiff's failure to appeal these two grievances renders his claims unexhausted. (*Id.*) Without specifically addressing defendant's argument (about the failure to appeal), plaintiff

9

maintains that he exhausted his administrative remedies.[4] (Dkt. 115 at p. 33-35.)

Defendant has not met her burden of pleading and proving plaintiff's failure to exhaust in this case.

First, and perhaps most importantly, it is unclear how many grievances plaintiff filed with respect to the issues underlying this lawsuit. Plaintiff's deposition testimony is replete with references to grievances that he purportedly filed with respect to various issues at the law library (*see e.g.*, Dkt. 122 at p. 39:20-21; 40:15-16.) Only two grievances, however, are included in the record. (Dkts. 111-3, 111-4.)

Second, and relatedly, the subject matter of the two grievances that are included in the record appear to be limited in subject matter to one particular incident that occurred on September 18, 2015 when plaintiff was "throw[n] out" of the law library. (Dkt. 111-3 at p. 1.) In the first grievance, plaintiff complains about the conduct of "Ms. Warren" and indicates, in particular, that "[she] withheld [his] third case law[.]" (*Id.*) This grievance also complains about Ms. Warren's "rude" conduct and her purported failure to follow the jail's rules for permitting inmates access to the law library. (*Id.*) The second grievance is drafted as a follow-up of sorts to the original grievance, as it expresses plaintiff's dissatisfaction with defendant Lake's response to the initial grievance and the manner in which the issue was handled. (Dkt. 111-4 at p. 1.)

Further still, there is confusing/ambiguous testimony from plaintiff in the record with respect to the appeal issue (on which defendant bases her exhaustion argument). That is, plaintiff testified at his deposition that: "[Defendant Lake] signed off on all [his] grievances that [he]

---

[4] It is unclear to the Court the precise nature of plaintiff's argument as to exhaustion. The brief section of his memorandum of law addressing exhaustion (Dkt. 115 at pgs. 33-35) largely consists of citation to statute and exhaustion caselaw, and does not specifically address what steps he took to exhaust his administrative remedies (or, if not, why he failed to do so).

complained about the issues [he] was complaining of[.]" (Dkt. 111-2 at p. 13.) When asked if plaintiff appealed "each and every single one of their responses to your grievances[,]" he testified as follows: "I'm not gonna say each and every one, but a majority of them I did, because some of them they just vanished. I don't know what happened to them. But most of them, I make it my procedure and practice to appeal every decision from an individual staff at the Cook County Jail to the highest level." (*Id.* at p. 13-14.) In a seemingly conflicting statement shortly thereafter, plaintiff testified that "[he] exhaust[s] [his] administrative remedies on everything." (*Id.* at p. 14.) As noted above, plaintiff's response to defendant's exhaustion argument, which does not specifically address the failure to file an appeal to the two grievances included in the record, does nothing to clarify this issue.

Based on the current record (as it is discussed above), the Court cannot determine whether plaintiff properly exhausted his administrative remedies prior to filing suit. It is unclear when plaintiff filed grievances, what he grieved, and whether he fully exhausted his administrative remedies with respect thereto. The Court therefore declines the invitation at this stage to find that plaintiff has not exhausted his administrative remedies. Defendant's motion with respect to this issue is denied.

## II. Plaintiff's Claims

### A. "Class of One" Equal Protection Claim

Defendant argues that she is entitled to summary judgment on plaintiff's "class of one" equal protection claim because there is no evidence that she intentionally treated plaintiff differently than any other similarly-situated detainee at the jail. (Dkt. 111-5, pgs. 8-9.) The Court agrees. Although plaintiff was allowed to proceed with this claim at the pleading stage, now that

a record has been developed, it is clear that the claim cannot proceed.

To prevail on an equal protection claim on a class-of-one theory, a plaintiff must show that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

The evidence before this Court shows that defendant Lake was not at plaintiff's law library visits, and that her involvement in the complained-of situation was primarily limited to her signing off on his grievances. Defendant's limited involvement in the situation alone tends to dispel any inference that she had formed some sort of personal animus or ill-will toward plaintiff—as he suggested in his complaint and continues to do so now in his responsive pleadings. Furthermore, plaintiff expressly testified at his deposition that it was law librarian Hawkins who treated him unfairly with respect to his court order concerning his law library access. There is also evidence in the record that defendant Lake took affirmative steps to remedy the problems plaintiff was having with the law library; specifically, she executed a disciplinary report against Hawkins for failing to permit plaintiff access to the law library (for one week in August and one week in September) in accordance with his court order. Along these lines, plaintiff also testified at his deposition that he believed defendant Lake attempted to get him what he needed from the law library. While plaintiff may not have received unlimited access to the law library (or as much access to the law library or legal resources as he wished), the record clearly shows that he received regular access to the law library both when he was at the jail and when he was sent, temporarily, to Moultrie County.

In an attempt to defeat summary judgment on this claim, plaintiff maintains, in much the same manner he did in his complaint, that he was treated differently than three similarly-situated inmates with court orders (Reginald Royal, Gene Lewis, Tyman Wilson). He claims that defendant Lake was angry with him for filing grievances about the law library, and that, as a result, she went to the state court judge in his criminal proceedings and worked to have his court order revoked.

Initially, plaintiff's contentions about similarly situated inmates are unsubstantiated by any record evidence; plaintiff has not submitted affidavits from the allegedly similarly-situated other inmates. Even assuming though that plaintiff was similarly situated to the other inmates he identifies now, this is not a situation in which the evidence suggests that defendant Lake acted out of any ill-will or some sort of personal animus toward plaintiff by, as he says, working to have his court order revoked because he filed grievances about the law library. As discussed above, plaintiff had limited contact with defendant Lake throughout the times relevant to the complaint, she attempted to get plaintiff the legal materials he needed, and she took disciplinary action against the individual law librarian who failed to honor plaintiff's court order. Moreover, the evidentiary material that plaintiff relies on in support of this claim—namely, a transcript from an October 21, 2015 hearing in his state court criminal proceedings involving his *pro se* status (Dkt. 115 at pgs. 92-121)—shows only that the state court had been in communication with M. Lake about plaintiff's court order (at some point), and that his court order had been/was

conditioned upon or subject to the jail's availability and resources.[5] Although plaintiff would like to have it some other way, there is simply no evidence before this Court that plausibly suggests that defendant Lake treated him differently than other inmates on account of his having filed grievances about the law library. Summary judgment is often referred to as "the 'put up or shut up' moment in litigation," where "the non-moving party is required to marshal and present the court with the evidence []he contends will prove h[is] case." *Goodman v. Natl. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (quoting *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010)). Plaintiff's vague references to other inmates with "court orders"—coupled with his personal, unsubstantiated belief that defendant Lake singled him out for having filed grievances and then worked to have his court order revoked—is insufficient to show that defendant Lake treated him differently than other inmates at the jail in violation of his equal

---

[5] The relevant portion of the transcript is as follows:

THE DEFENDANT:  And your Honor, can make sure that the court order states that mandatory three case laws because when I was down at the law library, I wasn't getting all my case laws when I was down there, and I wasn't getting my full time down there.

THE COURT:  Well, no they to – I've spoken to Ms. Lake, and they have to allocate that resource the law library amongst hundreds of persons who are representing themselves even some of them, many of them, but they have to make it available to everybody, not just pro se defendants, so it is a scarce resource, and they try to cycle you in as often as they can.  You will be allowed to use the law library there, but I will not dictate to them how often because they do it on a schedule that's fair to everybody –

THE DEFENDANT:  Well, will I still get three days a week?

THE COURT:  Oh, no, I won't say how often.

THE DEFENDANT:  Okay.  Well, I don't want to represent myself then, your Honor.

(Dkt. 115 at 110: 3-22.)

protection rights. Accordingly, summary judgment is granted to defendant with respect to this issue.

B.   **Retaliation Claim**

Defendant argues that she is entitled to summary judgment on plaintiff's retaliation claim because there is insufficient evidence to establish a causal link between plaintiff's grievances and the revocation of his court order. (Dkt. 111-5 at p. 9-10.) The Court agrees. Although plaintiff was allowed to proceed with this claim at the pleading stage, now that a record has been developed, it is clear that this claim, like plaintiff's "class of one" equal protection claim, cannot proceed.

"To prevail on his First Amendment retaliation claim, [plaintiff] must show that '(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action.'" *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). To establish that his First Amendment activity was a motivating factor in a defendant's adverse action, plaintiff "must show that the protected speech caused, or at least played a substantial part in, [defendant]'s decision" to take adverse action against plaintiff. *Spiegla v. Hull*, 371 F.3d 928, 942–43 (7th Cir. 2004). There must be "a causal link between the protected act and the alleged retaliation." *Woodruff*, 542 F.3d at 551. Plaintiff need not show that his First Amendment activity "was the only factor that motivated the defendant[] but [he] must show that it was 'a motivating factor.'" *Id.*

Defendant assumes, as does the Court, that plaintiff's filings of grievances is a protected activity under the First Amendment and that he suffered a deprivation (revocation of his court order granting him access to the law library three times a week) likely to deter future First Amendment activity.[6] Defendant argues instead that plaintiff fails to establish the remaining element—that plaintiff's filing of grievances was the but-for cause of defendant Lake's actions. (Dkt. 111-5 at pgs. 9-10.)

As discussed above, plaintiff admitted at his deposition that: defendant Lake was never at his law library visits; that her involvement with his access to the law library was limited to her signing off on his grievances; and that defendant Lake tried to get plaintiff what he needed from the law library (although her efforts were not always satisfactory to plaintiff). The evidence before this Court also shows that defendant Lake took disciplinary action against the law librarian who allegedly failed to provide plaintiff with his three visits to the law library (per his Court order), and that, at all times during which the court order was in place, plaintiff enjoyed at least one visit to the law library.

All that plaintiff alleged in his complaint—and that he now reiterates in his response to defendant's motion—is that he filed "many grievances regarding what was going on at the law library," that defendant Lake became "very furious" with him for filing grievances, and that she

---

[6] While the Court makes this assumption for purposes of ruling on the summary judgment motion, it notes that there is some question as to whether plaintiff suffered a deprivation that would likely deter future First Amendment activity. As discussed above, the evidence in the record shows that between July 2014 and October 2015, plaintiff received regular and frequent access to the law library (both at the jail and when he was shipped to Moultrie County). There is also evidence in the record that plaintiff was able to get one day per week at the law library throughout the period of time that his court order was in place. Given that the parties have not specifically addressed this issue (and since plaintiff has not come forward with any evidence to support the third prong of the analysis), the Court declines to further address the issue at this time.

allegedly had a "conversation" with his state court judge at some point concerning the order for the library. (Dkt. 115 at pgs. 40-43.) These are essentially the same contentions that plaintiff offers in support of his "class of one" equal protection claim, and they fail for substantially the same reasons. As discussed above, plaintiff's arguments about defendant Lake and the revocation of his court order are both conclusory and speculative in nature and are largely based on his personal, unsubstantiated beliefs that defendant Lake harbored some sort of ill-will toward him on account of him having filed grievances about the library. This is in sufficient to defeat summary judgment. At the summary judgment stage of proceedings, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008). Plaintiff has not done so here with respect to his claim of retaliation, and the Court therefore finds that defendant Lake is entitled to summary judgment on this claim.

### C. Qualified Immunity

As a final matter, defendant contends she is entitled to qualified immunity with respect to plaintiff's "class of one" equal protection and retaliation claims. Because, however, the Court finds that defendant is entitled to summary judgment with respect to both of plaintiff's constitutional claims (see discussion above), it is not necessary to address their qualified immunity argument. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597(7th Cir.1997) (when a court determines in a § 1983 case that no constitutional violation occurred, it is unnecessary to consider whether defendants are entitled to qualified immunity).

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, defendant's motion for summary judgment [111] is denied in part and granted in part. The motion is denied as to exhaustion. However, defendant's motion is granted as to plaintiff's retaliation claim and his "class of one" equal protection claim. Those claims are dismissed with prejudice. As there are no remaining claims or defendants, the case is dismissed in its entirety. Final judgment shall enter. Civil case terminated.

SO ORDERED.                    ENTERED: May 30, 2018

_____
HON. JORGE ALONSO
United States District Judge